DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment that terminated parental rights. It was issued by the Lucas County Court of Common Pleas, Juvenile Division. Because we conclude that the trial court's decision was not against the manifest weight of the evidence, we affirm.
Appellant, Angel G., is the natural mother of two minor girls, Anais G., and Terri K., who were aged four and two years old respectively, when abuse allegations were made. In October 1996, appellee, Lucas County Children Services ("LCCS") was granted emergency custody of the two children after a physician reported that Terri had extensive and severe bruises on her torso, neck, forehead, shins, and backs of her legs.
After an adjudicatory hearing in December 1996, the trial court found Terri to be abused and Anais to be dependent. In March 1997, temporary custody was given to LCCS and a reunification plan was implemented. Appellant and Terri's father were offered various services by LCCS. Terri's father failed to appear shortly after the case began and is not a party to this appeal. Appellant participated in some of the services, including a psychological assessment and parenting classes, but rejected others. During the pendency of the proceedings, appellant also gave birth to a third child, a son.[1]
In September 1997, LCCS moved for permanent custody. During a series of four hearings conducted between April 27, 1998 and July 29, 1998, various witnesses and evidence were presented regarding both appellant's and the girls' progress while the children were in foster placement. A social worker from Harbor Behavioral Health Care ("Harbor") testified that she works in the Child and Parent Program. This program, which is presented in two three-hour sessions per week for eight weeks, provides education in parenting techniques and an opportunity to actually work with one's child while learning the skills. The social worker stated that appellant first attended in July 1997, but quit after a few sessions.
In February 1998, appellant returned to the program and, this time, completed all classes. The social worker stated that although appellant had the ability to learn and apply the different techniques presented, she did not always do so with Anais. During evaluations, appellant received an average of seventeen daily points, based upon scores ranging from seven to thirty-five, for her interaction and use of positive comments. The social worker testified that the daily minimum required was fifteen and that many parents score in the fifties or sixties. The worker also noted that appellant did not see a need to praise the child. On days when appellant did not feel well, appellant essentially ignored Anais, permitting her to wander to far parts of the play area, seeking attention from other parents.
Dr. Jerome Zake, a psychologist, testified that he evaluated both appellant mother and father. While he did not find evidence in mother of any chronic mental illness, mother presented enough characteristics of paranoid personality disorder to indicate an interference with her ability to function. He indicated that this probably resulted in part from appellant's experience as a child in LCCS custody. Appellant reported to Dr. Zake that she had been adopted, but when her adoptive parents died, she was placed in an LCCS foster home where she was sexually abused. Consequently, appellant mistrusts LCCS and wants her children returned to her. While appellant expressed a desire to parent her children, she still consistently blames Anais for the problems she was having. According to Dr. Zake, although she spoke lovingly of Terri, she expressed anger and frustration with her inability to control four-year-old Anais.
Gloria Jorgensen, a social worker from Family Services at Northwest Psychiatric Hospital, testified that she had been providing counseling to appellant since the end of October 1997. Jorgensen testified that appellant appeared angry at first, because she had been forced into treatment by LCCS. During therapy, appellant's main goals centered on her own feelings and anger issues. Jorgensen stated that appellant had made some progress in that she is now more open in expressing her feelings or opinions and can more appropriately address her anger. The social worker stated that she had not dealt much with the relationships between appellant and her children. She noted, however, that appellant described Anais as "attention seeking"n
even if appellant is busy. Appellant saw Anais as the problem and not herself. Appellant also could not articulate any skills learned in her parenting classes. Jorgensen recommended that appellant continue in therapy.
Dr. Marvin Gottlieb, a psychiatrist, testified that he had been treating appellant since December 1997. He diagnosed appellant as suffering from depression; he prescribed Prozac, an antidepressant. He noted that after taking the medication, appellant improved, showing the ability to be more focused, with better attention and concentration. She also began to exhibit more trust in Dr. Gottlieb and began to talk with him about matters in her life. He testified that although she talks about taking care of her infant son, she has not discussed her problems with the two girls. However, she did comment that Anais' anger and behavior were difficult to deal with and hard to control. Gottlieb also recommended that she continue individual counseling and lower the dosage of her medication.
Jean Cook, a social work therapist at Harbor Behavioral Health, testified that in July 1996 appellant brought Anais, then four years old, to her for the purpose of addressing behavioral problems that included "aggression, defiance, oppositional, and testing limits." During this meeting, Cook observed that although Anais engaged in limit testing with her mother, appellant corrected Anais or pointed out behaviors which were typical of and appropriate for a four-year-old. Cook noticed and appellant acknowledged that Anais had a cigarette burn on her chest. Appellant said that Anais had walked into her cigarette. Appellant did not return for additional sessions.
Cook's next contact with the family occurred in the fall of 1996 after LCCS took custody. Cook provided Anais with therapy for issues regarding her removal from home and her adjustment to foster care. Anais exhibited nervous and anxious behaviors, including facial tics and eye blinking. She was very cautious in talking about family problems and instead, talked about Terri. Cook stated that during the year and a half in therapy, Anais has routinely tested limits at the end of each session, not wanting to leave or pick up toys. She has also tested limits and shown defiance in the foster home. Cook, nevertheless, testified that Anais' overall behavior has improved and she no longer exhibits nervous tics. Cook also stated that Anais is very bright and has been outspoken, especially in recent sessions with her mother.
Cook also observed Terri from time to time and brought her into the last fifteen minutes of some sessions with Anais. The foster mother was concerned that Terri did not play, initiate activities or conversations, or move unless told to. At the time of the initial sessions, Terri, then twenty-one months old, stood in the middle of the waiting room where she was placed and did not move. She just stared at the foster mother or whoever was talking and did not react with interest to toys presented to her. Cook concluded that Terri was overly complaint and hyper vigilant — very atypical toddler behavior. Cook noted that since being in the foster home, Terri now exhibits normal four-year-old behavior, she is quite verbal and spontaneously initiates activities, including provoking Anais on occasion.
Cook further testified that despite her therapy with appellant and Anais, appellant has been unable to adjust her thinking and methods of dealing with the children. Cook stated that appellant still blames Anais for the custody problems, engages in power struggles with Anais, and refuses to use praise or offer choices, even when told that Anais responds well to such methods. Cook also expressed concern that appellant is too rigid with Terri and does not recognize what are normal activities and behavior for children at different ages. In Cook's opinion, appellant could not adequately provide the type of nurturing that the children need.
LCCS' final witness, LCCS caseworker Betty Roesler, testified that appellant was often angry and volatile, and expressed this by yelling. Although appellant faithfully attended visitations, Roesler also observed power struggles between appellant and Anais. Appellant used only direct confrontation and rejection instead of positive reinforcement or other parenting methods. Roesler also noted that appellant's attitude differed towards the two children — with Anais, she was always irritable; with Terri, she was more nurturing. Roesler believed there was a continuing threat of harm to both children since appellant had refused to take responsibility for any of the physical abuse to Terri or problems with Anais.
Appellant then called several witnesses. Ernest S., the father and custodian of appellant's infant son, testified that appellant often yelled at Anais, who is extremely active. He described Terri as more docile and quiet. He also claimed that the burn on Anais' occurred because she accidentally ran into appellant's cigarette. He also stated that appellant's personality makes it unlikely that she would use much praise with her children. He noted that Terri bruises easily and was even blood tested twice for abnormalities.
Appellant's foster mother from the period when appellant was in the custody of LCCS also testified. She noted that Anais, whom she had taken care of several times, is a very aggressive child, but, in her opinion, not abnormally so. The foster mother said that during the monthly visits with appellant and the children, she never noticed anything inappropriate.
Appellant then testified that she had first sought help with Anais' behavior from Charter Hospital, who referred her to Harbor. Although Harbor had suggested parenting classes, she did not believe such services offered her any benefit. Appellant said that she then took Anais to Jean Cook. After the initial visit and certain inquiries made by Cook, appellant wanted to have the next sessions recorded to avoid misinterpretation of what Anais said. Appellant testified that she left messages for Cook, but her calls were never returned.
After the children were taken into custody by LCCS, appellant again was referred to counseling as part of the case plan.[2] She stated that she found her own counselor, Gloria Jorgensen, because LCCS failed to make a referral for her as promised. Appellant also began attending the Harbor parenting classes, but soon stopped because she did not think it offered anything new or useful. However, in February 1998, appellant, returned to the classes and completed them, in an effort to comply with the case plan.
Appellant also testified that Terri bruises very easily, but could not determine the reason for the bruises on the backs of her legs at the time custody was taken. She stated that Anais was often physically aggressive toward Terri and speculated that this may have been the cause. Appellant also stated that she had used many discipline methods with Anais, such as putting her in her room or a chair, not letting her go places, taking away privileges or toys, and spanking. Appellant acknowledged that once or twice she had used a small toy paddle when Anais was "rebelling against wanting to go to bed at night."
Appellant stated that she did not believe the parenting classes had been helpful and could not definitively say what else she could do to deal with Anais. She stated that she was "out of ideas" and did not think she should have to use positive reinforcement for behavior that Anais should already know. Finally, appellant acknowledged that she had no insight into what makes Anais behave the way she does. Essentially, appellant stated that she had not agreed with or benefitted from any of the recommended services offered by LCCS and still believes that the problem is with Anais.
The final witness was the children's foster mother who testified that Terri does bruise more easily than other children and currently had a significant number of bruises on her body, knees, and legs. However, she explained that Terri had gotten them from climbing on play equipment out in the yard and that none of the bruises were as severe as the ones shown in the pictures taken when the children were removed from appellant's home. The foster mother acknowledged that Anais was very obstinate, argumentative, and ran around a great deal when she first came to the foster mother two years before. The foster mother stated that Anais' behavior has, however, improved dramatically. Anais now responds well to reasoning and discipline methods such as positive reinforcement, praise, early bed times, time outs, and taking away privileges. The foster parents do not ever use spanking or hitting. Anais is also more open, plays, sings, likes affection and is much more affectionate to others. The foster mother stated that Anais has not shown aggression or inappropriate physical play towards Terri.
The foster mother did note that while she has improved at home, Anais still has behavior problems at school. Nevertheless, in her eight-year experience as a foster mother, she would not classify Anais as an unusually difficult child to manage. The foster mother also stated that Terri, who was very unresponsive when she first came, now runs, plays and acts like a normal four-year old.
The guardian ad litem recommended that permanent custody be granted to LCCS. Based upon the evidence presented, the trial court found that it was in the children's best interest that permanent custody be granted to LCCS because appellant had failed to remedy the conditions for which the children had been removed and the children cannot or should not be returned to their parents.
Appellant mother now appeals from that decision, setting forth the following sole assignment of error:
 "The Trial Court's Decision to Grant Lucas County Children Service's [sic] Board Permanent Custody Is Not Supported by Clear and Convincing Evidence."
R.C. 2151.413(A) permits a public or private children services agency to file a motion for permanent custody of a child previously adjudicated abused, neglected, and/or dependent and who is in the agency's temporary custody. Permanent custody may be awarded if 1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, and 2) a grant of permanent custody of a child to a children's service agency is in the child's best interest. R.C. 2151.414(B). In determining the best interest of the children, the court is directed to consider all evidence which is relevant to that case. R.C. 2151.414(D).
R.C. 2151.414(E) sets forth the factors by which a court may determine by clear and convincing evidence whether a child cannot or should not be placed with his or her parents. "Clear and convincing" evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. R.C. 2151.414(E)(1) states:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning an diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
We initially note that, contrary to LCCS implications, appellant's mere failure to comply with the case plan is not automatic grounds for granting permanent custody. See R.C.2151.414(E). Although appellant may have refused certain services offered by LCCS, after several delays, appellant did attend and complete the recommended parenting program. She also completed the psychological evaluation, and met with a therapist.
Nevertheless, despite evidence that her daughter's behavior can be controlled with positive comments and discipline, appellant refuses to accept that other parenting methods may be appropriate for her children. Although Anais still has some problems in school, she has responded favorably to praise and positive reinforcement methods of discipline in the foster home. Terri does apparently bruise more easily than most children. However, in the two years of placement, her foster mother has never observed bruising on the backs of her legs or her face as severe as those which were the cause of the removal. In addition, Terri has been transformed from being a fearful and unresponsive two-year-old to a normal, spontaneous four-year-old. Appellant prefers to view Anais as a child who needs to be "fixed" to conform with her mother's abilities to cope and parent her. Terri, the compliant child who was physically abused, is now healthy, much more spontaneous and interactive, and presents a greater challenge to a parent. Unfortunately, due to appellant's inflexible and static views about parenting, this increased healthy activity also increases the threat of harm to Terri.
While we recognize the devastating impact of appellant's childhood history, the evidence presented demonstrates that appellant refuses to accept any responsibility for or contribution to her children's problems. She also refuses to change her parenting methods to adequately meet her children's needs. The conditions requiring removal were primarily due to appellant's physical abuse of Terri and her inability to appropriately parent and nurture Anais. Since the evidence presented supports a finding that appellant has failed to remedy these conditions, we conclude that the trial court's decision to grant permanent custody to LCCS was not against the manifest weight of the evidence.
Appellant's sole assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] That child is in the custody of his father, Ernest S., who was a witness but is not a party to these proceedings.
[2] Testimony was presented that appellant was also referred to Compass for substance abuse assessment. Although she was not actually found to be an abuser, the intake counselor recommended that she attend "educational classes." Appellant refused to attend these classes, which included possible referral to Alcoholics Anonymous meetings. No evidence was ever presented to show that she, in fact, has such a substance abuse problem. Therefore, her failure to attend classes at Compass was not determinative of her ability to parent her children. However, we do not think this evidence was pivotal to the trial court's final determination, since the greater weight of the evidence focuses on appellant's inability to understand her own deficiencies and to change her methods of parenting Anais and Terri.